**SINGH, SINGH & TRAUBEN, LLP**
**MICHAEL A. TRAUBEN** (SBN: 277557)
 mtrauben@singhtraubenlaw.com
**THOMAS K. RICHARDS** (SBN: 310209)
 trichards@singhtraubenlaw.com
400 S. Beverly Drive, Suite 240
Beverly Hills, California 90212
Tel: 310.856.9705 | Fax: 888.734.3555

*Attorneys for Plaintiff*
ANDREAS ZERR, an individual doing business as
STERN7 FILMPRODUKTION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREAS ZERR, an individual doing business as STERN7 FILMPRODUKTION, <br><br> Plaintiff, <br><br> v. <br><br> LINUS O'BRIEN, an individual; and DOES 1 through 10, inclusive, <br><br> Defendants. | ) Case No.: **2:26-cv-3687** <br> ) <br> ) **COMPLAINT FOR:** <br> ) <br> )　**1. DECLARATORY RELIEF – NON-INFRINGEMENT;** *and* <br> )　**2. 17 U.S.C. § 512(f) MISREPRESENTATION;** <br> ) <br> ) **DEMAND FOR JURY TRIAL** <br> ) <br> ) <br> ) |

1

SINGH,
SINGH &
TRAUBEN,
LLP

Plaintiff Andreas Zerr, an individual doing business as Stern7 Filmproduktion ("**Zerr**" or "**Plaintiff**"), by and through his undersigned counsel, hereby files this Complaint against defendant Linus O'Brien ("**O'Brien**" or "**Defendant**") and DOES 1 through 10, inclusive, and alleges as follows:

## NATURE OF ACTION

1.      This action arises out of Defendant Linus O'Brien's wrongful effort to suppress and interfere with Plaintiff's documentary motion picture through the misuse of copyright law and the Digital Millennium Copyright Act.

2.      Plaintiff produced and directed the feature length documentary film *Sane Inside Insanity: The Phenomenon of Rocky Horror* (the "**Documentary**").

3.      The Documentary is a nonfiction work that examines the cultural phenomenon of *Rocky Horror*, including its history, fan culture, social significance, and continuing impact.

4.      In creating the Documentary, Plaintiff made limited and highly selective use of excerpts from certain *Rocky Horror* related materials, including musical compositions that O'Brien claimed were controlled by Druidcrest Ltd. ("**Druidcrest**").

5.      Plaintiff's use of those materials is non-infringing, including because such use constitutes fair use under 17 U.S.C. § 107.

6.      Despite being placed on repeated notice that Plaintiff's position was grounded in fair use, and despite knowing that Plaintiff had obtained and relied upon written legal opinions concerning fair use and related doctrines, O'Brien nevertheless undertook a campaign to brand the Documentary as unlawful, to interfere with its exploitation, and to cause its removal from exhibition platforms.

7.      O'Brien's true motive was not to protect any legitimate economic interest in musical rights. Although O'Brien is the son of Richard O'Brien, the composer of the *Rocky Horror* music and, on information and belief, a co-owner of Druidcrest, O'Brien is not known to have any business relationship with Druidcrest, and any license fees or damages paid to Druidcrest would not have benefited O'Brien personally in any way. Instead,

SINGH,
SINGH &
TRAUBEN,
LLP

O'Brien repeatedly referred in his correspondence to "my father's music" or "my Dad's music," while O'Brien objective was to prevent Plaintiff's Documentary from being released in any form because O'Brien feared that it would divert attention from O'Brien's own documentary film, *Strange Journey: The Story of Rocky Horror*, on the same subject matter.

8.    Among other things, O'Brien repeatedly asserted that Plaintiff could not "fair use any clips or music," contacted festivals, sales agents, and distribution related parties to state that Plaintiff lacked rights to include the music, and caused or submitted copyright complaints and takedown notices directed at the Documentary, including to Apple TV, resulting in the Documentary's removal from that platform.

9.    O'Brien's conduct culminated in knowing and material misrepresentations in one or more DMCA takedown notices, made without the requisite good faith consideration of fair use and without any legitimate basis to certify that the Documentary was infringing.

10.    An actual and justiciable controversy therefore exists between Plaintiff and O'Brien concerning whether Plaintiff's use of the works at issue in the Documentary infringes copyrights that O'Brien repeatedly claimed barred Plaintiff's exploitation of the Documentary.

11.    Plaintiff seeks declaratory relief confirming that the use at issue is non-infringing, and further seeks damages and other relief under 17 U.S.C. § 512(f) for O'Brien's knowing and material misrepresentations, including those concerning sales and theatrical distribution and in his takedown notices.

## THE PARTIES

12.    Defendant O'Brien is, and at all relevant times was, an individual residing in Los Angeles County, California.

13.    Upon information and belief, O'Brien is the son of Richard O'Brien and the director and producer of a documentary film titled *Strange Journey: The Story of Rocky Horror*, concerning the same or substantially similar subject matter as Plaintiff's Documentary. O'Brien's *Strange Journey* was scheduled for release on the same day in

SINGH, SINGH & TRAUBEN, LLP

3

COMPLAINT

September 2025 as Plaintiff's Documentary, namely the 50th anniversary of the original United States theatrical release of *The Rocky Horror Picture Show*. The timing of those competing planned releases further underscores O'Brien's motive to interfere with Plaintiff's Documentary out of concern that it would divert public attention away from his *Strange Journey*.

14. Although O'Brien repeatedly invoked Druidcrest and asserted that Druidcrest controlled certain musical rights, O'Brien is not known to Plaintiff to have any business relationship with Druidcrest that would entitle him to receive any license fees, royalties, or damages in connection with the compositions at issue.

15. O'Brien's conduct was motivated by a desire to suppress Plaintiff's competing Documentary and prevent it from receiving public attention that O'Brien feared would detract from attention to his own film, *Strange Journey: The Story of Rocky Horror*.

16. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

17. Plaintiff is informed and believes, and on that basis alleges, that each Doe Defendant participated in, assisted with, authorized, ratified, and/or contributed to the wrongful conduct alleged herein.

## JURISDICTION AND VENUE

18. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the Copyright Act, including 17 U.S.C. § 512(f), and under 28 U.S.C. §§ 2201 and 2202 because Plaintiff seeks declaratory relief concerning copyright non-infringement.

19. This Court has personal jurisdiction over O'Brien because he resides in this District and engaged in substantial conduct giving rise to the claims alleged herein in this District.

20. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(1)

SINGH,
SINGH &
TRAUBEN,
LLP

4

COMPLAINT

and (2) because Defendant O'Brien resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

21.     Venue is also proper because O'Brien's wrongful conduct was directed to persons and entities in and from this District, and because O'Brien threatened and interfered with the exploitation of the Documentary through conduct tied to Los Angeles, California.

## FACTUAL ALLEGATIONS

22.     Plaintiff developed, produced, and directed the Documentary, *Sane Inside Insanity: The Phenomenon of Rocky Horror*.

23.     The Documentary is an original nonfiction film that chronicles the history and cultural significance of *Rocky Horror*, including the creation of the early stage show, the later film adaptations, the fan community, audience participation, shadow casts, and the broader social themes associated with the phenomenon.

24.     The Documentary features interviews, archival materials, and limited excerpts of third party materials used for purposes of commentary, criticism, historical discussion, education, and cultural analysis.

25.     Before release, Plaintiff undertook substantial efforts to assess the legal issues presented by the Documentary's use of third party materials, including whether such use constituted fair use under United States law.

26.     Among other things, Plaintiff obtained written legal opinions from counsel addressing the availability of fair use under United States law with respect to the Documentary.

27.     Plaintiff also sought a publishing license through a clearance agency in or around November 2024, but that request was denied on behalf of Druidcrest and Richard O'Brien.

28.     Thereafter, Plaintiff continued to rely on counsel's analysis that the Documentary's limited use of the materials at issue was lawful and non-infringing.

29.     On or about June 10, 2025, O'Brien emailed Plaintiff asserting, among other

SINGH, SINGH & TRAUBEN, LLP

things, that Plaintiff lacked synchronization rights and could not "fair use any clips or music."

30. This assertion reflected not a good faith evaluation of the Documentary, but rather an outright refusal to acknowledge or consider the fair use doctrine as applied to the Documentary.

31. Shortly thereafter, instead of engaging in a meaningful legal discussion concerning Plaintiff's fair use position, O'Brien began contacting third parties associated with Plaintiff's Documentary.

32. On or about June 12, 2025, O'Brien contacted representatives of the Docs Ireland International Documentary Film Festival and asserted that Plaintiff was not allowed to include the music in the Documentary.

33. As a result of O'Brien's communication, the Documentary was removed from the Docs Ireland lineup and, upon information and belief, was replaced there by O'Brien's documentary, *Strange Journey: The Story of Rocky Horror*.

34. O'Brien's campaign against the Documentary was never truly about protecting musical rights or securing compensation for any rights holder. O'Brien has no known economic interest in Druidcrest's alleged rights, and any license fees or damages paid to Druidcrest would not have benefited O'Brien. Instead, O'Brien sought to block Plaintiff's Documentary from being released because he viewed it as a competing film that could draw attention away from his own documentary project, *Strange Journey: The Story of Rocky Horror*.

35. On or about June 18, 2025, O'Brien sent Plaintiff a letter stating that Druidcrest had not authorized Plaintiff to use the compositions and asserting that any use of such compositions in the Documentary would violate the Copyright Act and constitute willful infringement.

36. On or about June 25, 2025, O'Brien sent similar assertions to a representative of Plaintiff's sales agent and/or distribution related contacts, again flatly stating that Plaintiff lacked rights and was infringing.

SINGH,
SINGH &
TRAUBEN,
LLP

6

37. Plaintiff was thereafter informed, and believes, that O'Brien made or caused similar assertions to additional parties involved in exhibition, sales, and distribution of the Documentary, including ROCO Films, Screenbound UK, and Raina Distribution.

38. O'Brien undertook this course of conduct despite having been placed on notice that Plaintiff was relying on fair use and related doctrines, and despite knowing that Plaintiff's counsel had provided written legal analysis supporting non-infringement.

39. On or about July 15, 2025, Plaintiff's counsel sent O'Brien a detailed legal demand explaining, among other things, that Plaintiff had obtained separate written legal opinions under United States law, and that if fair use and fair dealing applied, then the uses at issue would not constitute infringement.

40. Plaintiff's counsel further advised O'Brien and third parties that the Documentary should be evaluated on its merits and not through the false assumption that the Documentary was necessarily infringing.

41. Defendant O'Brien nevertheless persisted.

42. On or about September 9, 2025, O'Brien contacted representatives of the Oslo/Fusion International Film Festival and asserted that the Documentary's use of the music did not fall under fair use and that Plaintiff was fully aware of the purported infringement.

43. As a result of that communication, the Documentary was pulled from that festival's lineup.

44. On or about September 25, 2025, and continuing thereafter, O'Brien submitted, authorized, caused to be submitted, and/or materially participated in copyright infringement claims and takedown notices directed to Apple TV concerning the Documentary.

45. Those claims and takedown notices caused Apple to remove the Documentary from its platform.

46. As a direct result, Plaintiff was forced to submit a counter notice to Apple on or about October 18, 2025 pursuant to 17 U.S.C. § 512(g), asserting that the removal was

mistaken and that the Documentary's use was lawful, including under fair use.

47. O'Brien's infringement notices and takedown demands were made after he had already been repeatedly advised of Plaintiff's non-infringement position and fair use analysis.

48. Before making those takedown demands, Defendant did not undertake the subjective good faith consideration of fair use required by law.

49. Instead, O'Brien had already predetermined that any use by Plaintiff was infringing, as reflected by his categorical statement that Plaintiff could not fair use any clips or music and his repeated flat assertions that the Documentary was unlawful.

50. Defendant did not perform the requisite good faith legal evaluation of the Documentary itself before certifying infringement in their takedown notices.

51. The Documentary, however, uses only limited excerpts for transformative purposes in connection with commentary, criticism, historical analysis, and education concerning the Rocky Horror phenomenon.

52. The Documentary does not serve as a substitute for the underlying works.

53. The Documentary does not usurp the market for the underlying films, stage productions, or songs.

54. To the contrary, the Documentary addresses a distinct subject matter and audience, namely the social, historical, and cultural phenomenon surrounding Rocky Horror and the effect it has had on fans, performers, and communities.

55. O'Brien nonetheless continued to assert that the Documentary was unlawful and to use copyright accusations and takedown procedures to suppress the Documentary's exploitation.

56. O'Brien's counsel later confirmed in writing that O'Brien rejected Plaintiff's claims, denied wrongdoing, disputed Plaintiff's account, and asserted that no § 512(f) violation had occurred.

57. O'Brien also threatened further remedies unless Plaintiff capitulated.

58. O'Brien's pattern of conduct shows that his objective was to stop the

COMPLAINT

SINGH,
SINGH &
TRAUBEN,
LLP

Documentary from reaching audiences at all. He was not pursuing any known personal economic interest in Druidcrest's alleged rights. Rather, he used copyright accusations and takedown mechanisms as a tool to suppress a competing documentary that he feared would draw attention away from his own film, *Strange Journey: The Story of Rocky Horror*.

59.     An actual, immediate, and substantial controversy therefore exists between Plaintiff and O'Brien regarding whether Plaintiff's use of the materials at issue in the Documentary infringes copyrights that O'Brien repeatedly claimed barred the Documentary's distribution and exhibition.

60.     Unless restrained by this Court and unless the parties' rights are adjudicated, Defendant's conduct will continue to cloud Plaintiff's rights, disrupt exploitation of the Documentary, and expose Plaintiff to further takedowns, threats, and marketplace interference.

61.     All conditions precedent to the institution of this action have been satisfied, excused, discharged, and/or waived.

## COUNT I
## DECLARATORY RELIEF – NON-INFRINGEMENT
### (*By Plaintiff as Against Defendant O'Brien*)

62.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 61 as if fully set forth herein.

63.     Pursuant to 28 U.S.C. §§ 2201 and 2202, and the Copyright Act, this Court may declare the rights and legal relations of the parties concerning the controversy alleged herein.

64.     An actual controversy has arisen and now exists between Plaintiff and Defendant O'Brien concerning whether Plaintiff's use in the Documentary of certain Rocky Horror related materials, including musical compositions purportedly controlled by Druidcrest, constitutes copyright infringement.

65.     Defendant has expressly asserted that Plaintiff's use is unauthorized and infringing, have demanded that Plaintiff cease exploiting the Documentary, and have

SINGH,
SINGH &
TRAUBEN,
LLP

9
COMPLAINT

caused or sought removal of the Documentary through infringement complaints and takedown notices.

66.   Plaintiff contends, and Defendant disputes, that Plaintiff's use is lawful and non-infringing.

67.   Plaintiff's use is non-infringing, including because it constitutes fair use under 17 U.S.C. § 107.

68.   Among other things, the Documentary uses limited excerpts for transformative purposes of commentary, criticism, education, historical analysis, and cultural examination.

69.   The amount and substantiality of the uses are reasonable in light of those purposes.

70.   The Documentary does not function as a market substitute for the underlying works.

71.   Defendant's contrary position has already caused Plaintiff substantial harm, including disruption of festivals, sales and distribution opportunities, platform availability, revenues, and the continuing commercial exploitation of the Documentary.

72.   A declaration of rights is necessary and appropriate so that Plaintiff may continue to exploit the Documentary free from Defendant's wrongful assertions of infringement and may seek reinstatement and protection of the Documentary on platforms and in the marketplace.

73.   Plaintiff therefore seeks a judicial declaration that Plaintiff's use of the materials at issue in the Documentary does not infringe any copyright purportedly owned, administered, or controlled by Defendant O'Brien.

74.   Plaintiff is further entitled to recover his costs and, to the extent permitted by law, reasonable attorneys' fees, including under 17 U.S.C. § 505.

///

///

///

SINGH, SINGH & TRAUBEN, LLP

10

## COUNT II
## <u>17 U.S.C. § 512(F) MISREPRESENTATION</u>
### (*By Plaintiff as Against Defendant O'Brien*)

75.  Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 74 as if fully set forth herein.

76.  Section 512(f) of the Copyright Act imposes liability on any person who knowingly materially misrepresents that material or activity is infringing.

77.  O'Brien submitted, authorized, caused to be submitted, and/or materially participated in one or more notices or claims of copyright infringement directed at online service providers and platforms, including Apple, concerning the Documentary.

78.  Those notices invoked or functioned as notices under the DMCA takedown regime and contained the representation, express or implied, that O'Brien had a good faith belief that the challenged material was not authorized by the law.

79.  At the time O'Brien made those notices and certifications, he knew of Plaintiff's reliance on fair use and related legal doctrines.

80.  O'Brien had already been advised in writing that Plaintiff had obtained written legal opinions supporting non-infringement.

81.  O'Brien therefore did not and could not have formed the requisite subjective good faith belief that the Documentary's use was infringing without first considering fair use.

82.  O'Brien either failed to consider fair use altogether, willfully blinded himself to it, or paid only lip service to the required analysis before submitting his takedown notices.

83.  O'Brien's misrepresentations were knowing and material because they directly caused, and were intended to cause, removal of the Documentary from online distribution and exploitation channels.

84.  As a direct and proximate result of O'Brien's conduct, Apple removed the Documentary from its platform, forcing Plaintiff to submit a counter notice and causing disruption to Plaintiff's distribution, revenues, and exploitation of the Documentary.

SINGH, SINGH & TRAUBEN, LLP

11

85.     O'Brien's wrongful conduct also caused Plaintiff to incur attorneys' fees, costs, lost revenues, lost business opportunities, reputational harm, and other damages according to proof.

86.     Pursuant to 17 U.S.C. § 512(f), Plaintiff is entitled to recover any damages, including costs and attorneys' fees, incurred by Plaintiff as a result of Defendant's knowing material misrepresentations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Andreas Zerr, an individual doing business as Stern7 Filmproduktion, respectfully prays for judgment against Defendant O'Brien and Does 1 through 10, as follows:

1.    For a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 and the Copyright Act that Plaintiff's use of the materials at issue in the Documentary is non-infringing;

2.    For compensatory damages according to proof under 17 U.S.C. § 512(f);

3.    For an award of costs and attorneys' fees as permitted by 17 U.S.C. §§ 505 and 512(f), or otherwise as allowed by law;

4.    For preliminary and permanent injunctive relief preventing Defendant from submitting further false takedown notices or otherwise interfering with Plaintiff's lawful exploitation of the Documentary based on the same challenged uses;

5.    For punitive damages based upon Defendant's willful misconduct; *and*

6.    For such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues in this action so triable.

SINGH,
SINGH &
TRAUBEN,
LLP

12

COMPLAINT

DATED:  April 7, 2026

Respectfully Submitted,

**SINGH, SINGH & TRAUBEN, LLP**
**MICHAEL A. TRAUBEN**


By:   /s/ Michael A. Trauben
        Michael A. Trauben

***Attorneys for Plaintiff***
ANDREAS ZERR, an individual doing business as STERN7 FILMPRODUKTION

SINGH, SINGH & TRAUBEN, LLP

13
COMPLAINT